IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE JUDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.: |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| WAL-MART STORES EAST, L.P., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

## PARTIES & JURISDICTION

COMES NOW Plaintiff Debbie Juden, by and through her attorneys, and for her complaint against Defendant Wal-Mart Stores East, L.P., states as follows:

1. This is an action for monetary damages, declaratory and injunctive relief and other equitable and ancillary relief, brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 621 *et seq.* for age discrimination, or in the alternative, for retaliation for refusing to engage in disability discrimination under the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12112 *et seq*.

2. Plaintiff, Debbie Juden (hereinafter "Plaintiff" or "Juden"), is an individual residing in the State of Missouri, County of Cape Girardeau.

3. Defendant Wal-Mart Stores East, L.P. (hereinafter "Walmart" or "Defendant") is a duly registered corporation in good standing, conducting and transacting business within Stoddard County, in the State of Missouri.

4. Defendant is an "employer" within the meaning of the ADEA and the ADA.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1367.

6. Plaintiff requests a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

7. Venue is proper in the Eastern District of Missouri, Southern Division, because Plaintiff was employed in the Eastern District of Missouri, in Stoddard County, and all of the events complained of herein occurred in Stoddard County, Missouri within the Eastern District of Missouri.

8. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  She received a Notice of Right to Sue Letter on 12/10/19 for Charge No. 560-2019-02623 from the EEOC and has timely filed this action within 90 days of receipt of that Notice of Right to Sue Letter.  *See* Charge of Discrimination attached hereto as Exhibit 1.

## FACTS COMMON TO ALL COUNTS

9. Debbie Juden was born in July of 1961.  At the time of her termination, Plaintiff was 57 years old.

10. Juden first became employed by Walmart on November 21, 1979.  Beginning in November of 2000, Juden became the general Store Manager of the Wal-Mart Super Center in Dexter, Missouri (Store #30) and remained in that job for more than 18 years. In total, Plaintiff was employed by Walmart for nearly 40 years.

11. The only "coaching" Plaintiff ever received in her nearly 40-year career at Walmart occurred nearly 20 years ago.

12. During her time as Store Manager, Store #30 received numerous awards for inventory excellence.

13. Because of her excellent management and work ethic, Plaintiff maxed out her potential incentive bonus every year she served as Store Manager.

14. In 2019, Walmart began a "new approach" in stores and with store managers, stating specifically that they wanted a "new approach" and "new eyes."

15. For the first time in 2019, Juden was given a "development needed" on technology.

16. As part of this "new approach" of wanting younger and more vibrant employees, in 2019, Walmart decided to eliminate all greeters (who are largely disabled and elderly employees) by changing all job descriptions to include a requirement that an employee be able to climb a ladder and lift heavy weights.

17. Juden strongly disagreed with this new policy, as she instantly recognized it as trying to hide disability discrimination, by cloaking it in a change in job-duty description.

18. Juden was able to find a loophole, and was able to retain her disabled and/or elderly employees by assigning them to the self-checkout station.

## CREATION OF THE FALSE AND PRETEXTUAL REASON

19. On January 17, 2019, two men came to Store #30 and introduced themselves to Juden as with the corporate office from "Global Investigations." One of the men was named Austin Spears ("Spears").

20. Juden escorted them to a conference room so they could meet with employees in private.

21. Juden went about her day, completely oblivious as to the reason the men had appeared that day.

22. Towards the end of the day, around 5 p.m., Spears asked Juden to come to the conference room.

23. When she entered the room, there was a laptop open at the table.

24. Spears asked Juden if she recalled going to the service desk about a money transfer. Juden asked what time period, and Spears replied "around Christmas."

25. Juden stated that she recalled an issue with an upset customer who had left her identification at home and was trying to send her granddaughter some gas money ($100-$150) to pick her up for Christmas.

26. Spears became angry, and asked Juden if she remembered "overriding that money transfer" and/or "telling an associate to override it."

27. Juden denied doing either.

28. Spears started raising his voice and his hand started to shake, pointing at the laptop and stated, "then why do I have the associate's statement that said you did and I have video?"

29. Juden again denied it.

30. Spears then changed avenues and stated Juden asked a "vendor" to do it.

31. Juden said she explained that the customer was talking about having another customer do the money order for her, and Juden told her not to do that. Juden, believing the issue was resolved, returned to her other duties.

32. Spears then stated that after she left the area, the money transfer was completed. Spears then loudly demanded that Juden "tell the truth!"

33. Juden replied that she was telling the truth.

34. Spears replied that "Walmart pays him good money to travel and do this job and he knew what he was doing."

35. Juden replied, "Good for you."

36. Spears then apologized and said that someone would get back to Juden in a few days with a decision. They shook hands and Juden left.

37. After this, Juden called her Market Manager, Gary Eichhorn ("Eichhorn") and told Eichhorn that she was very upset about the way she had been treated and talked to and asked what this was all about.

38. Eichhorn denied any knowledge of what was occurring.

39. Spears and the other man returned the next day to speak to another employee. Later, Juden asked an associate to assist her in viewing the videotape in the room so she could see if Spears had been as aggressive to her other employees as he had been to Juden during her interrogation.

40. A month passed, and the next time Juden heard from anyone was around February 18, 2019. On this date, someone from Global Investigations called Juden to ask her why she viewed the videotape of the interrogation of her employee. Juden explained she wanted to know if Spears was as aggressive with her other employees as he had been to Juden during her interrogation.

41. Several weeks passed, and on March 8, 2019, Juden was called into a meeting with Eichhorn and Human Resources and told that she needed to take the weekend off. They told her to really think about what happened with the money transfer in December and be prepared to answer questions on Monday.

42. Juden again asked what this was all about and why this issue was being raised again, now almost three months later.

43. Juden became very upset, demanded to know why she was being falsely accused of overriding a money order, and demanded to know if they were trying to fire her because of her age and her salary.

44. Both men were silent.

45. On Friday March 15, 2019, Juden received a phone call telling her to come to the Market Office on March 19, 2019.

46. On March 19, 2019, Eichhorn, Human Resources and Sue Wilson met with Plaintiff.

47. Eichhorn told Juden that the investigation into the money transfer found "you walked away and you were the last person there and then the money transfer took place."

48. Eichhorn said the investigation was "substantiated" and this is "what I have to do."

49. Juden demanded to know what the policy was on money transfers. Eichhorn said he could not answer that.

50. Juden said that she did not override any transfer and demanded to know what policy she did not follow, and what she was being fired for.

51. Eichhorn recommended she use the "open door" policy to tell her side of the story.

52. Juden handed over her store property and left.

53. Juden was illegally terminated on March 19, 2019.

54. In order to cover up their illegal discrimination and retaliation, Walmart had the audacity to accuse Plaintiff, internally and externally to members of the community, of a crime.

55. Of course, because the alleged reason that Walmart fired Plaintiff was false and, in fact, not a crime, and on fact not even against Walmart's own policies, no crime has ever been reported to the police.

## COUNT I – Age Discrimination

COMES NOW Plaintiff, by and through her undersigned counsel, and for Count I of her Complaint, states as follows:

56. Plaintiff incorporates the preceding paragraphs of this Complaint into Count I of this Complaint as if fully set forth herein.

57. Plaintiff at all times relevant herein was and is over the age of forty (40).

58. Because of her age, level of experience and years of service, Plaintiff was a highly compensated employee.

59. Plaintiff was terminated on March 19, 2019, for a pretextual reason relating to a money transfer.

60. But for Plaintiff's age, Plaintiff would not have been terminated.

61. As a direct and proximate result of Plaintiff's termination by Defendant, she has sustained and will continue to sustain lost wages and other benefits of employment, including future salary.

62. The conduct of Defendant was wanton, willful, and showed a reckless indifference to Plaintiff's protected rights as set forth above, justifying an award of liquidated damages against Defendants.

WHEREFORE, Plaintiff prays this Court to enter judgment in her favor and against Defendant and thereafter:

A. Order Defendant to make Plaintiff whole for any and all losses or damages she has suffered including back pay, benefits of employment, and front pay;

B. Award Plaintiff liquidated damages against the Defendant in such sum as this court believes is fair and reasonable;

C.  Award Plaintiff the costs of this action, together with her reasonable attorneys' fees;

D.  Award Plaintiff pre- and post-judgment interest; and

E.  Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

### COUNT II –Retaliation for Refusing to Engage in Disability Discrimination
### In the Alternative to Count I

COMES NOW Plaintiff, by and through her undersigned counsel, and for Count II of her Complaint, in the alternative to Count I, states as follows:

63. Plaintiff incorporates the paragraphs (1-55) of this Complaint into Count II of this Complaint as if fully set forth herein.

64. Defendant retaliated against Plaintiff by terminating her for pretextual reasons because Plaintiff refused to engage in disability discrimination that was being carried out nation-wide by Wal-Mart.

65. As a direct and proximate result of Plaintiff's termination by Defendant, she has sustained and will continue to sustain lost wages and other benefits of employment, including future salary.

66. The conduct of Defendant was wanton, willful, and showed a reckless indifference to Plaintiff's protected rights as set forth above, justifying an award of punitive damages against Defendant.

WHEREFORE, Plaintiff prays this Court to enter judgment in her favor and against Defendant and thereafter:

A.  Order Defendant to make Plaintiff whole for any and all losses or damages she has suffered including back pay, benefits of employment, and front pay;

  B. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

  C. Award Plaintiff the costs of this action, together with her reasonable attorneys' fees; and

  D. Award Plaintiff pre- and post-judgment interest;

  E. Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

        Respectfully submitted,

        **NEWTON BARTH, L.L.P.**

  By: /s/ *Brandy B. Barth*
     Brandy B. Barth, 56668MO
     555 Washington Ave., Suite 420
     St. Louis, Missouri 63101
     (314) 272-4490 – Telephone
     (314) 762-6710 – Facsimile
     brandy@newtonbarth.com